### MAKEA, K, *vs.* NALUA, K.

#### ON QUESTION RESERVED.

By the statutes of descent, the inheritance of collaterals terminates with the brothers and sisters of the parents of the intestate and their direct descendants. Plaintiff's grandfather being brother to intestate's grandmother, he as intestate's second cousin cannot inherit from her.

The relationship of grand-uncle to a desceased intestate is not an inheriting relationship.

*Semble.* A grandfather cannot inherit from his grandson.

Opinion of a majority of the Court by HARRIS, C. J.

This is an action of ejectment for a piece of land in Koolaupoko, Oahu. The jury rendered a verdict for the plaintiff, to which the defendant excepted and moved for judgment *non obstante veredicto,* on the ground that by the evidence of the plaintiff he is not within the degree of relationship which by the statutes of this country would entitle him to inherit.

The land was patented to Hinaaimalama, who died leaving an infant son Kupau and a widow Kalele; the son died soon after, and the estate vested in his mother Kalele. Makea, the plaintiff, claims that his grandfather Kumaiahea was brother to Keawelaikini, the grandmother of Kalele, making him Kalele's second cousin. The question reserved for the consideration of the Court is whether such a relationship is capable of inheriting by the statute of descent in this country.

The defendant contends that the statute terminates the inheritance of collaterals with the brothers and sisters of the parents and their direct descendants, and prohibits the inheritance from going any further back, and thus cuts off the grand-uncles and grand-aunts and their descendants.

PER CURIAM.

On account of the comparatively recent period at which regular government and rights of property in land have been established in this country, there is no necessity of inquiring into any ancient laws or customs touching the descent of property. Previous to the year 1846, it cannot be said that the common people had any rights of property in land by inheritance, since they were liable at all times to be dispossessed of their holdings at the arbitrary will of their own chiefs; and even the superior classes themselves, although they were accustomed when in expectation of death to designate the person whom they desired to be heir to their property, yet this will (kauoha),

though generally respected, was liable at all times to be defeated or modified by the will of the superior chief. It was not until the year 1839 that any rights of property were established in the common people. In that year protection was declared, both for person and property, in the following words: "Protection is hereby secured to the persons of all the people, together with their lands, their building lots and all their property." See Declaration of Rights, page 10, Old Laws. Although this simple decree was a step towards establishing the rights of the people in their property, yet there was no recognition of the right of inheritance. It was simply intended to confirm the living people in their present possession, and did not alter the rights of the chief to re-distribute the land to whomsoever he might see fit, on decease of the tenant. Thus, it will be seen, there are no ancient rights and customs to inquire into, and all rights of property and inheritance began at the time of the initiation of settled government in 1846. In that year a code of laws was published, and the Land Commission was established and went into operation. All rights of inheritance therefore were created by the statute. In the Statute Laws of 1846, page 101, Section 7, it is enacted: "Lands so patented (that is, purchased from the Government), shall never revert to the King of these Islands, nor escheat to this Government for any other cause than attainder of high treason, as defined by the Criminal Code, or for the non-payment of taxes as prescribed in the third part of this Act, or for the utter default of heirs of the testate or intestate owners, being Hawaiian subjects, as in fifth part of this Act prescribed;" and at page 199 of the same Code, Section 6, it is enacted: "The rules of descent and natural inheritance shall be those defined by the Civil Code." But in the fifth part of the Act there was no provision for inheritance, and the fair inference is, that inasmuch as the Land Commission was then sitting, and was passing directly upon each individual claim, it was not deemed expedient to make a provision for so im-

portant a matter until there should be farther time to think of it, and to reconcile the chiefs to a measure which would deprive them of important rights which they had been accustomed to exercise.   Accordingly we find that in 1850 the first enactment touching inheritance was passed.  The circumstances of the country did not render such an act imperatively necessary before that time; because, as it has been said before, the Land Commission, during the three years preceding, had been occupied in collecting testimony, and not long previously had begun to adjudicate upon the rights of possession of individuals.   This first enactment reads as follows, so far as it is applicable to this case:

"Whenever any person shall die intestate within this Kingdom, his property, both real and personal, shall descend to and be divided among his heirs as hereinafter prescribed;" and the second section, after setting forth the manner of descent to lineal descendants, proceeds to enact: "If the intestate shall leave no issue, his estate shall descend one-half to his widow, and the other half to his father and mother as tenants in common; if he leave no widow, nor issue, the whole shall descend to his father and mother, or to either of them if only one be alive."

"If he shall leave no issue nor father nor mother, his estate shall descend one-half to his widow, and the other half to his brothers and sisters, and to the children of any deceased brother or sister by right of representation; if he shall leave no issue nor father nor mother, and no brother or sister, his estate shall descend one-half to his widow, if any, and one-half to the brothers and sisters of his father and mother, and to their children by right of representation; and if he leave no widow, then such collateral heirs shall inherit the whole estate; provided, always, that if the estate come through either parent, the brothers and sisters of that parent shall be preferred to the others."

"If the intestate shall have been married and leave no kin-

dred but a widow, then she shall inherit all his estate; and if the intestate be a woman and leave no kindred but her husband, then he shall inherit all her estate."

The law as subsequently re-enacted in the Civil Code in 1859, differs from this in no material degree. This law prescribes the line of descent. The first section states distinctly that the property is to be divided among his heirs as hereinafter prescribed, which is the same as to say that in the new order of things, there having been no heirship before, those persons enumerated in that statute should be heirs and none other. When it says in the last paragraph, "if the intestate shall leave no kindred but a widow, she shall inherit all his estate," it does not mean that she is to contend against every person claiming kinship, however remote, but the persons meant by "kindred" in that section are those enumerated above and none other.

If the circumstances of the country at the time of the enactment of this statute be taken into consideration, it will be seen that there was a difficulty of tracing remote collateral relations. Only ten of the American States by their statutes, expressly carry the inheritance farther back than ours. In all these statutes, there are words similar to these: "If there be neither of these (relations), then to the next of kin in equal degree;" "In cases not provided for by the statute, the inheritance descends according to the course of the common law;" and when it is considered that the compilers of the Civil Code had all these statutes before them, it is impossible to conceive that they omitted these provisions unintentionally.

Again, Section 1453 of the Civil Code enacts, that, "If any illegitimate person shall die intestate without leaving lawful issue or a widow, his estate shall descend to his mother, but if he leaves a widow, she shall inherit one-half and his mother the other half, but if his mother be not living and his widow is, then the widow shall take the whole; otherwise his estate shall escheat to the Hawaiian Government." Now, if there

29

be anything in the argument adduced from Section 1451, to the effect that, if the deceased has any kindred, though not within the degrees prescribed by the statute, his estate shall not escheat to the Hawaiian Government, how would such a construction square with Section 1453, above quoted? The brothers and sisters of the mother of the illegitimate son would quite as easily be ascertained, as though he were legitimate; and yet, they are declared by this statute to be not "kindred" within the line of inheritance, and yet, surely such brothers and sisters are ascertainable kindred. All this tends to show that the word "kindred" in Section 1448 of the Civil Code, as well as in Section 1451, means the kindred prescribed by the statute and none other. And it is worthy of observation, that by the last paragraph of Section 1448, the widow is expressly defined as "kindred."

The fact is, that the State had the right to limit the heirship as they saw fit, and they have limited it by express words, as far as regards collateral heirship, to the uncles and aunts of the deceased persons and their descendants by representation. Let us take an example which is plain enough. Suppose a father possessing property died, leaving an infant son heir to his property; that infant son is being brought up in the household of his grandfather and dies yet a child—natural reason might say that the *grandfather* shall be the heir to his grandson, as he certainly would have been the heir to his own son, had it not been for the grandson. Now, could it be said for a moment that in the face of this statute any Court could decree the property to the grandfather, there being uncles and aunts yet living; but by the statute the property of the deceased boy would go to the brothers and sisters of the father first, because he would have acquired the property, and if there were none, then to the brothers and sisters of his mother, and the paternal grandfather would thus be cut off entirely from the estate which his son had acquired. The force of this example is to show that no matter how

different views of natural reasons may induce us to think that an estate should take such and such a course, the Legislature cannot be presumed to have intended anything beyond the statute that they have enacted or different from it; the statutes have prescribed those who are to be reckoned "kindred" and heirs, and we cannot go outside of it.

We are, therefore, of the opinion that the contention of the defendant in this action is correct, and that the plaintiff is not within the degree of relationship which would entitle him to inherit by the statute, and therefore order that judgment be entered for the defendant, *non obstante veredicto.*

Messrs. Castle & Hatch for plaintiff.

Messrs. Dole and Kaulukou for defendant.

Honolulu, October 24, 1879.